Iona Elizabeth BEARD and Jean Beard,
Petitioners–Appellants,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.

No. 94–5097.

United States Court of Appeals,
Federal Circuit.

Dec. 22, 1994.

William M. Murphy, Murphy, Moore & Bell, of Fort Worth, TX, submitted for petitioners-appellants.

Vincent Matanoski, Attorney, Dept. of Justice, of Washington, DC, submitted for respondent-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., Helene M. Goldberg, Director, John Lodge Euler, Deputy Director and Gerard W. Fischer, Asst. Director.

Before NIES, MICHEL and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Iona Elizabeth Beard appeals from the February 2, 1994 order of the United States Court of Federal Claims affirming the dismissal of her petition for compensation under the National Childhood Vaccine Injury Act of 1986 (Act), Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3755 (codified at 42 U.S.C. §§ 300aa–1 et seq. (1988 & Supp. V 1993)). The order appealed is affirmed.

I

Beard's petition for compensation under the Act alleged that she contracted polio as a result of contact with her daughter, who received an injection of inactivated polio vaccine (IPV) which, because of contamination during manufacture, contained infectious polio virus. Beard's petition was consolidated

with several others alleging similar community-acquired polio from contact with recipients of contaminated IPV. Chief Special Master Golkiewicz decided the consolidated cases in *Staples v. Secretary of Dep't of Health & Human Servs.*, No. 90–1205V, 1993 WL 330948 (Fed.Cl.Sp.Mstr. Aug. 16, 1993), concluding that terms of the Act limit compensation for community-acquired polio to those who contract the disease from recipients of oral polio vaccine (OPV). On August 18, 1993, the Chief Special Master dismissed Beard's petition in reliance on his decision in *Staples.* Beard's motion for review by the Court of Federal Claims was held in abeyance pending decision on the motion for review in the *Staples* case. On January 26, 1994, Judge Yock in a thorough opinion affirmed the Chief Special Master's dismissal of Staples' petition for compensation, holding that the Act bars compensation for community-acquired polio from exposure to recipients of contaminated IPV. *Staples v. Secretary of Dep't of Health & Human Servs.*, 30 Fed.Cl. 348 (1994). Relying on Judge Yock's opinion and decision, Judge Weinstein by order affirmed the dismissal of Beard's petition for compensation. Beard timely appeals that order. We have jurisdiction to hear the appeal pursuant to 42 U.S.C. § 300aa–12(f) (Supp. V 1993).

## II

■ Beard's appeal raises a single question of statutory interpretation, namely whether the Act affords compensation to a person who contracts polio from another person who received contaminated IPV. Such questions "come to us for decision with little if any deference owed to or expected by the forums below," *Munn v. Secretary of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 (Fed.Cir.1992), and are reviewed de novo. *Widdoss v. Secretary of Dep't of Health & Human Servs.*, 989 F.2d 1170, 1174 (Fed. Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 381, 126 L.Ed.2d 331 (1993).

## III

The pertinent statutory references begin with 42 U.S.C. § 300aa–13(a)(1) (1988 & Supp. V 1993), which establishes the baseline standard of eligibility for compensation under the Act, providing in relevant part that:

> Compensation shall be awarded under the Program to a petitioner if the special master or court finds on the record as a whole—
>
> (A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title....

In a paragraph entitled "Petition content," 42 U.S.C. § 300aa–11(c)(1)(A) (1988 & Supp. V 1993) requires a petition for compensation to contain an affidavit and supporting documentation demonstrating that the person who suffered injury or who died:

> [R]eceived a vaccine set forth in the Vaccine Injury Table or, if such person did not receive such a vaccine, contracted polio, directly or indirectly, from another person who received an oral polio vaccine.

In addition, 42 U.S.C. § 300aa–11(c)(1)(B)(ii) (1988) requires a petitioner to demonstrate that:

> if such person did not receive such a vaccine [set forth in the Vaccine Injury Table] but contracted polio from another person who received an oral polio vaccine, [and such person] was a citizen of the United States or a dependent of such a citizen.

■ The clear, unambiguous and unmistakable terms of §§ 13(a) and 11(c) limit compensation under the Act to a person who either has *received* a vaccine set forth in the Vaccine Injury Table or contracted polio from the recipient of *oral* polio vaccine.

## IV

■ Beard's daughter did not receive OPV. Consequently, Beard cannot demonstrate entitlement to compensation under the provisions of the Act that clearly afford relief to victims of exposure to recipients of OPV.

■ Instead, Beard argues that she, while not the direct recipient of any polio vaccine, should be deemed *de jure* to have constructively received a Table-listed vaccine. With respect to polio vaccines, the Vaccine Injury Table in 42 U.S.C. § 300aa–14(a) (1988 & Supp. V 1993) contains two enumerations:

III. Polio Vaccines (other than Inactivated Polio Vaccine).
  A.  Paralytic polio

    —  in a non-immunodeficient recipient .................................... 30 days
    —  in an immunodeficient recipient ..................................... 6 months
    —  in a vaccine-associated community case ........................ Not applicable

\*    \*    \*    \*    \*    \*

IV. Inactivated Polio Vaccine.
  A.  Anaphylaxis or anaphylactic shock ..................................... 24 hours

---

The Vaccine Injury Table, by its terms, lists the vaccines, the adverse health consequences resulting from the administration of the listed vaccines, and the time periods in which the first reaction must occur after vaccine administration in order to qualify for compensation under the Act. With regard to paralytic polio contracted in a vaccine-associated community case, the Table establishes no time period limitation for occurrence of a first reaction to vaccine administration.

As a victim of paralytic polio, Beard argues that the contaminated IPV injected into her daughter should be defined under Part III as a polio vaccine "other than Inactivated Polio Vaccine" because, due to its contamination, it was in fact an activated polio vaccine. Beard thus claims entitlement to compensation under § 11(c)(1)(A) as a recipient of a Table-listed vaccine.

Beard argues for a broad interpretation of "received" in § 11(c)(1)(A) so that she may claim entitlement to compensation as recipient of a Table-listed vaccine under Part III "other than Inactivated Polio Vaccine." She points to the Chief Special Master's finding in a companion case, Staples, that §§ 11(c) and 14(a) are in "irreconcilable" conflict. According to the Chief Special Master, § 11(c) refers only recipients of vaccines (vaccinees) to the Table in § 14(a), and provides for injuries from contact with persons receiving oral vaccine in § 11(c)(1). However, the Table contemplates polio from a "vaccine-associated community case," which by definition, occurs in non-vaccinees, creating under this interpretation, the "conflict" that the Table appears to compensate a non-vaccinee when § 11(c)(1)(A) only refers vaccinees to the Table.

From the Chief Special Master's reading of the statute, Beard reasons that "received" in § 11(c) is ambiguous, as we cannot read "received" narrowly to mean only vaccinees where the Table contemplates compensating non-vaccinees in community contact cases. Urging a broad reading of "received," Beard argues that she constructively "received" a Table-listed polio vaccine within the meaning of § 11(c)(1)(A).

We thus address Beard's argument that she constructively "received" a Table-listed polio vaccine within the meaning of § 11(c)(1)(A), because, "having given her consent, the mother truly should be considered, together with the child, to have received the vaccine being administered" to the child. Beard points to various definitions of "receive" such as accept; acquire; take as from a source or agency of transmission; obtain or get as a result of a delivery, transmission or communication; acquire from any source outside of oneself; to approve; to have; to be subjected to; etc. Beard argues that Congress would have used a term with a narrower meaning (such as "administered to" or "injected with") had it intended to limit the class of potential plaintiffs to exclude people like Beard who were not actually injected with the vaccine. Additionally, Beard draws our attention to the Table category "other than Inactivated Polio Vaccine," arguing that Congress did not use the categories "OPV" and "IPV," but rather contemplated compensation where contaminated IPV was not inactivated and caused injury.

■  We must reject her argument. First, we disagree with the Chief Special Master that §§ 11(c) and 14(a) are "irreconcilably in conflict." Section 11(c)(1) contains five elements which a petition for compensation under the Vaccine Act must satisfy. Although

it is correct that § 11(c)(1)(A) directs only vaccine recipients to the Table in § 14(a), the Chief Special Master incorrectly concluded that only vaccine recipients could benefit from the Table. Under §§ 11(c)(1)(B)(ii) and 11(c)(1)(C)(i) persons who "did not receive [a vaccine set forth in the Table] but who contracted polio from another person who received *oral* polio vaccine," (emphasis added) and who "sustained, or had significantly aggravated, any illness, disability, injury or condition set forth in the Vaccine Injury Table" may petition for compensation. Thus, § 11(c)(1)(C)(i) directs non-vaccinees who contract polio from a person who received an *oral* polio vaccination, to the Table. Consequently, the provision in the Table for community contact cases is not anomalous and is consistent with § 11(c)(1).*

Second, Beard's definition of the word "receive" would lead to an anomaly whereby parents and guardians of children who were vaccinated with contaminated IPV would qualify for compensation but unrelated third parties would not. The Act makes no such distinctions with respect to those who qualify for compensation.

Because Beard did not *receive* a vaccine set forth in the Table, § 11(c)(1)(A) requires—in order for her petition to survive—that she demonstrate that she "contracted polio, directly or indirectly, from another person who received an *oral* polio vaccine." (emphasis added). This Beard cannot do, because her daughter did not receive OPV. In the final analysis, for Beard to prevail, we would have to ignore the word "oral" in §§ 11(c)(1)(A) and 11(c)(1)(B)(ii). That we cannot do.

The order of the Court of Federal Claims affirming the Chief Special Master's dismissal of Beard's petition for compensation is therefore

*AFFIRMED.*

No Costs.

---

* Although Congress's intent in creating a category "other than Inactivated Polio" rather than "OPV" remains less than clear, we do not need to divine Congress's intent given the clear direction of the statute allowing only vaccinees and people who contract polio from recipients of *OPV* to benefit from the Table.